ROBERT A. CHAISSON, Judge.
I ?,The sole issue presented in this appeal is whether defendant’s sentences of life imprisonment without benefit of parole for his four second degree murder convictions are excessive in light of the fact that he was a juvenile at the time the offenses were committed. For the reasons that follow, we find that defendant’s sentences are not excessive and that the trial court did not err in denying defendant parole eligibility on the sentences imposed for his second degree murder convictions.

PROCEDURAL HISTORY

On November 18, 2011, a twelve-person jury found defendant, Dominique Davis, *1225 guilty of four counts of second degree murder (counts one, four, five, and six), one count of armed robbery (count two), one count of illegal use of weapons (count three), one count of attempted second degree murder (count seven), and one count of conspiracy to commit armed robbery (count eight). Thereafter, on | December 5, 2011, the trial court sentenced defendant to four consecutive sentences of life imprisonment without benefit of parole, probation, or suspension of sentence on the four counts of second degree murder. The trial court further sentenced defendant to ninety-nine years at hard labor without benefit of parole, probation, or suspension of sentence on the armed robbery count, two years at hard labor on the illegal use of weapons count, fifty years at hard labor on the attempted second degree murder count, and forty-nine years at hard labor on the conspiracy to commit armed robbery count.
Defendant thereafter appealed his convictions and sentences. This Court affirmed defendant’s convictions on all counts and his sentences for armed robbery, illegal use of weapons, attempted second degree murder, and conspiracy to commit armed robbery. However, because defendant was a juvenile at the time the offenses were committed, this Court vacated the portions of defendant’s life sentences for second degree murder (counts one, four, five, and six) that eliminated parole eligibility and remanded to the trial court for resentencing in conformity with Miller v. Alabama, — U.S. -, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012). See State v. Davis, 12-512 (La.App. 5 Cir. 4/24/13), 115 So.3d 68, writ denied, 13-1205 (La.11/22/13), 126 So.3d 479.
In accordance with this Court’s instructions, the trial court conducted a Miller hearing, and after considering the evidence presented, determined that defendant’s original life sentences without parole were appropriate. The trial court thereafter re-sentenced defendant on counts one, four, five, and six to consecutive sentences of life imprisonment without benefit of parole, probation, or suspension of sentence. Defendant now appeals his resentencing.

\ ¿EXCESSIVE SENTENCE

In his sole assigned error on appeal, defendant argues that the four life sentences imposed without the possibility of parole are excessive. To support his argument that he should have been granted parole eligibility, defendant points out that he was sixteen years old at the time of the offenses, that he has only a low level of education, and that he has a very limited criminal history as a juvenile. Defendant further notes that the evidence of his identity as a participant in the crimes was weak and that he chose not to testify at trial, as he had originally planned, because his family had been threatened. Given these factors, defendant contends that the denial of parole eligibility constituted cruel and unusual punishment and served no state interest. We find no merit to defendant’s arguments.
Both the Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive and cruel punishment. State v. Lawson, 04-334 (La.App. 5 Cir. 9/28/04), 885 So.2d 618, 622, writ denied, 05-0244 (La.12/9/05), 916 So.2d 1048. A sentence is considered excessive, even when it is within the applicable statutory range, if it is grossly disproportionate to the seriousness of the offense or imposes needless and purposeless pain and suffering. In reviewing a sentence for *1226 excessiveness, the appellate court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the court’s sense of justice. State v. Payne, 10-46 (La.App. 5 Cir. 1/25/11), 59 So.3d 1287, 1294, writ denied, 11-0387 (La.9/16/11), 69 So.3d 1141. The trial judge is afforded wide discretion in determining sentences, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed. 5State v. Berry, 08-151 (La.App. 5 Cir. 6/19/08), 989 So.2d 120, 131, writ denied, 08-1660 (La.4/3/09), 6 So.3d 767.
For those offenders convicted of second degree murder in Louisiana, LSA-R.S. 14:30.1 mandates a sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. However, in 2012, the United States Supreme Court in Miller held that a state’s sentencing scheme that mandates life imprisonment without parole for those offenders under the age of eighteen at the time they committed a homicide offense, violates, the Eighth Amendment prohibition against cruel and unusual punishment. State v. Stewart, 13-639 (La.App. 5 Cir. 1/31/14), 134 So.3d 636, 639, writ denied, 14-0420 (La.9/26/14), 149 So.3d 260.
The Miller Court did not establish a categorical prohibition against life imprisonment without parole for juveniles, but rather required that a sentencing court consider an offender’s youth and attendant characteristics as mitigating circumstances before deciding whether to impose the harshest penalty for juveniles who have committed a homicide offense. State v. Williams, 12-1766 (La.3/8/13), 108 So.3d 1169. In Miller, supra at 2469, the United States Supreme Court stated, “Although we do not foreclose a sentencer’s ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.”
In State v. Brown, 12-0872 (La.5/7/13), 118 So.3d 332, 335, the Louisiana Supreme Court acknowledged that “the Miller holding permits the imposition of a life sentence without parole but only after an opportunity to consider mitigating circumstances.” In light of Miller, the legislature, during the 2013 regular session, enacted LSA-C.Cr.P. art. 878.1, allowing parole consideration for juveniles 1 ^sentenced to life imprisonment for certain homicide offenses after a sentencing hearing.[1] That article, which became effective on August 1, 2013, provides:
A. In any case where an offender is to be sentenced to life imprisonment for a conviction of first degree murder (R.S. 14:30) or second degree murder (R.S. 14:30.1) where the offender was under the age of eighteen years at the time of the commission of the offense, a hearing shall be conducted prior to sentencing to determine whéther the sentence shall be imposed with or without parole eligibility pursuant to the provisions of R.S. 15:574.4(E).
*1227 B. At the hearing, the prosecution and defense shall be allowed to introduce any aggravating and mitigating evidence that is relevant to the charged offense or the character of the offender, including but not limited to the facts and circumstances of the crime, the criminal history of the offender, the offender’s level of family support, social history, and such other factors as the court may deem relevant. Sentences imposed without parole eligibility should normally be reserved for the worst offenders and the worst cases.
In the instant case, the trial court clearly complied with the sentencing directives set forth in Miller. At the first resentenc-ing hearing on September 17, 2014, the district court took judicial notice of the entire record of the case, including the transcripts of the testimony adduced at trial. The State then presented the testimony of Colonel Timothy Scanlan of the Jefferson Parish Sheriffs Office. Colonel Scanlan, who investigated the murders, recalled the gruesome nature of the scene and thereafter produced eighteen photographs that illustrated the scope of the injuries caused by defendant during the perpetration of the crimes. These photographs depict that the nineteen-year-old girl sustained gunshot wounds to her back and a “gaping wound” near the top of her head. They further illustrate that the twenty-three-month-old was shot “execution style” in his bed, depicting blood seeping from the top of his head, and a pool of blood in the bed next to him where the six-year-old boy, who was transported to the hospital |7and later died, was sleeping. Colonel Scanlan testified that of the hundreds of homicides he has investigated in his career, the crime scene in this case “stuck” with him because it involved the shooting deaths of innocent children as they lay sleeping in their beds.
After the presentation of Colonel Scan-lan’s testimony, the court continued the hearing to give defendant the opportunity to present any testimony or evidence. On October 1, 2014, defendant submitted a Miller brief setting forth his sentencing mitigation arguments. In his brief, defendant recounted the incidents, noted the weak evidence against him, and maintained that placing the blame solely on him, when other older parties were involved in these offenses, would be unjust. Defendant also submitted that his silence at trial was the result of death threats made upon his family; thus, without his testimony, no light was shed upon how his palm print was found at the scene of one of the crimes.
The trial court also learned from the memorandum that defendant had a learning disability and was in special education classes until the seventh grade when he ended his school career. He provided information in the form of school records to establish that during the last year he was in school (2006-2007), his grades ranged from D’s to F’s, he had frequent absences, and his disciplinary record consisted of six incidents of willful disobedience and disrespect for authority, one incident of habitually disturbing class, and one incident of possession of drugs. The trial court also gained information regarding defendant’s mental capacity in the form of an IQ evaluation which revealed a full scale IQ of 76, and a psychological evaluation which revealed that defendant showed “no significant behavioral problems until he associates with negative peers and marijuana use.” In his Miller brief, defendant concluded that the only criminal records he has are his juvenile records and that he still has a chance to learn “good Inhabits” and to take advantage of “life worthy schooling opportunities” that may benefit him. With discipline and control, defen *1228 dant argued that he could make himself worthy of a chance at a good life if given the opportunity for parole. He further indicated that if released, he has necessary familial support.
On October 29, 2014, the Miller hearing resumed. After carefully considering the evidence submitted by both parties, the trial court determined that the denial of parolg eligibility was appropriate and thereafter resentenced defendant to life imprisonment without benefit of parole, probation, or suspension of sentence on counts one, four, five, and six. In denying defendant parole eligibility, the trial court reasoned as follows:
... [T]he Court will take into consideration, obviously, the case on Miller versus Alabama, 132 Supreme Court 2455. In that case, the United States Supreme Court indicated that a mandatory life sentence without the benefit of parole, probation or suspension of sentence for a juvenile — for a person who was a juvenile at the time the offense was committed violated the 8th Amendment, and ordered the Court, in this case, this Court, to undertake a review as to whether or not a sentence without benefit of parole or probation of sentence would be appropriate as opposed to being mandatory.
In that regard, the Court stated that I am to consider, in light of a child’s diminished culpability and heightened capacity for change, appropriate indications for sentencing, juveniles to life without the possibility of parole, and suggested that such sentence should be uncommon, especially, because of the great difficulty of distinguishing them at an early age between a juvenile defendant whose crime reflects, unfortunate, yet transient immaturity, and the world juvenile offender whose crime reflects irreparable corruption.
The Court went on to state that while a sentencer’s ability to impose a sentence of life without the possibility of parole when a juvenile convicted of a homicide is not foreclosed, the sentence must take into account how children are different and how those differences counsel against irrevocably sentencing them to lifetime in prison.
In addition to that, the Court is also taking into consideration the factors relevant to sentencing in Louisiana under Article 894.1 both mitigating and aggravating circumstances. And, of course, considered the nature of the crime involved here, the violence of the crime involved here, the weapons involved in the crime here, the age of the victims involved, the pure carnage of the crime involved | scommitted by Mr. Davis. Without speaking to the issue of whether or not all juveniles should be appropriately sentence[d] to life without benefits in this type of crime and speaking only to this particular offense by Mr. Davis, the Court does find that these •circumstances involved in the offense committed, after reviewing the information submitted by the defendant, as well, and the sheer horror that was inflicted upon these victims, as well as their families, the Court does find that the appropriate sentence in this case would be life without the benefit of parole, probation or suspension of sentence.
Based upon considering the Court’s review of Miller, along with the Sentencing Guidelines, again, under Article 894.1, I find it hard to imagine a circumstance where a life sentence without the benefit of parole, probation or suspension of sentence in this particular *1229 instance not be appropriate, given the nature of this crime and the violence imposed upon these victims and their families.
As evidenced by these extensive reasons, the trial court clearly complied with the Supreme Court’s directive in Miller and carefully considered defendant’s youth at the time of the offenses, as well as all the other mitigating circumstances; however, based on the facts of the case and the violence and brutality of the crimes committed, the trial court believed that the denial of parole was warranted. We agree with this determination.
In State v. Smoot, 13-453 (La.App. 5 Cir. 1/15/14), 134 So.3d 1, writ denied, 14-0297 (La.9/12/14), 147 So.3d 704, this Court found that the trial court complied with the Miller principles at the sentencing hearing and thereafter affirmed the imposition of life imprisonment without benefit of parole, probation, or suspension of sentence upon a juvenile defendant who shot an elderly, homeless drug addict multiple times. This Court noted that the trial court considered mitigating factors and particularly took defendant’s youth into account before imposing the sentence.
Likewise, in State v. Brooks, 49,033 (La.App. 2 Cir. 5/7/14), 139 So.3d 571, writ denied, 14-1194 (La.2/13/15), 159 So.3d 459, the appellate court affirmed the trial court’s denial of parole eligibility to a defendant convicted of second degree |10murder committed while he was a juvenile. On original appeal in Brooks, the appellate court affirmed the second degree murder conviction of a juvenile who, armed with an assault rifle, participated in a senseless gunfight which resulted in the death of an innocent bystander. However, the court of appeal vacated the mandatory sentence of life imprisonment at hard labor, without benefits, and remanded the case to the trial court for resentencing in light of the Miller holding. State v. Brooks, 47,394 (La.App. 2 Cir. 12/12/12), 108 So.3d 161, writ denied, 13-0080 (La.5/31/13), 118 So.3d 393. On remand, the trial court conducted a sentencing hearing pursuant to LSA-C.Cr.P. art. 878.1 and again imposed a sentence of life imprisonment without parole. On appeal after remand, the court of appeal affirmed the sentence, finding that the trial court had complied with the directives set forth in Miller and had conducted the required sentencing hearing, at which it considered the defendant’s youth along with any aggravating or mitigating evidence. The court also found that the sentence was not grossly out of proportion to the seriousness of the offense, nor was it a purposeless and needless infliction of pain and suffering; therefore, it concluded that the life sentence without parole was not excessive. Brooks, 139 So.3d at 576-77. See also State v. Fletcher, 49,303 (La.App. 2 Cir. 10/1/14), 149 So.3d 934 and State v. Wilson, 14-1267 (La.App. 4 Cir. 4/29/15), 165 So.3d 1150 (where the appellate courts found no error in the trial court’s imposition of life sentences without benefit of parole, probation, or suspension of sentences on defendants convicted of homicide offenses committed while they were juveniles).
In accord with these cases, we likewise find no error in the trial court’s denial of parole eligibility to defendant convicted of four homicide offenses committed while he was a juvenile. The trial judge complied with this Court’s directive to conduct a sentencing hearing, and he thereafter carefully considered ^defendant's youthful age, the circumstances of the offenses, the violence and brutality of the offenses, and all other mitigating and aggravating evi *1230 dence that was presented. Given this careful review, we cannot say that the trial court abused its discretion in sentencing defendant to four consecutive life sentences without benefit of parole, probation, or suspension of sentences for homicides committed when he was sixteen years old. Moreover, pursuant to our own careful review of the record, we find that the .sentences imposed are not grossly out of proportion to the seriousness of the. offenses so as to shock our sense of justice and therefore conclude that the life sentences without benefits imposed on defendant are not excessive. Accordingly, the arguments raised by defendant in this assigned error are without merit.

ERRORS PATENT REVIEW

We have also reviewed the record for errors patent, according to LSAC.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals errors in the State of Louisiana Uniform Commitment Order with regard to the dates of the offenses and the date of defendant’s resentencing. First, the uniform commitment order incorrectly reflects January 15, 2009, as the offense date for all of the crimes. While January 15, 2009, is the correct offense date for counts one and two, it is not the correct date for the remaining offenses. In particular, the record reflects that the offenses on counts three, four, five, six, and seven were committed on April 11, 2009, and the offense on count eight was committed between January 15, 2009, and April 14, 2009. In addition, the uniform commitment order does not contain the date defendant was resentenced, October 29, 2014, after remand by this Court for a Miller hearing.
hiiThis Court has previously remanded a case for correction of the uniform commitment order in its errors patent review. See State v. Lyons, 13-564 (La.App. 5 Cir. 1/31/14), 134 So.3d 36, writ denied, 14-0481 (La.11/7/14), 152 So.3d 170. Therefore, we direct the trial court to make the appropriate entries reflecting these changes and direct the Clerk of Court to transmit the original of the corrected uniform commitment order to the officer in charge of the institution to which defendant has been sentenced and the Department of Corrections’ Legal Department. See LSA-C.Cr.P. art. 892(B)(2); State ex rel. Roland v. State, 06-244 (La.9/15/06), 937 So.2d 846; State v. Lyons, 134 So.3d at 36.
Accordingly, for the reasons set forth herein, we affirm defendant’s sentences of life imprisonment without benefit of parole, probation, or suspension of sentence on counts one, four, five, and six. This matter is remanded for correction of errors patent as noted herein.

AFFIRMED; REMANDED WITH INSTRUCTIONS

. Louisiana courts have applied and interpreted the Miller case and Louisiana’s statutory implementation of its principles. In State v. Tate, 12-2763 (La.11/5/13), 130 So.3d 829, cert. denied, - U.S. -, 134 S.Ct. 2663, 189 L.Ed.2d 214 (2014), the Louisiana Supreme Court found that the Miller prohibition against mandatory life imprisonment without parole for juvenile murderers does not apply retroactively in state cases on collateral review and that the Louisiana statutes addressing Miller apply prospectively only. State v. Fletcher, 49,303 (La.App. 2 Cir. 10/1/14), 149 So.3d 934, 940.